[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings this action to recover under the terms of an agreement entered into by the parties.
The parties entered into a written agreement (Exhibit A) wherein the plaintiff was to provide to the defendant certain financial consulting and advisory services with regard to the acquisition of a corporate entity by one or both defendants. The plaintiff was to receive certain fees and the right to purchase stock warrants in the defendant, corporation. The defendants agreed that the plaintiff has performed some of the services contracted for, but that a valuation for those services has not been determined. Further, the defendants contend that the right to purchase the warrants set out in the agreement is premature, in that the "closing" has not taken place.
The factual situation is relatively simple. The defendant, Floyd Wallace, III, was interested in buying all or portions of Middleburg Corporation. To assist in accomplishing this the defendant, Floyd Wallace, III, entered into a contract with the plaintiff, Venture Partners, Ltd., to provide consulting services regarding financing, business plan financing and arranging equity and/or debt financing, partnership or a sale or merger. The agreement spelled out the expectations of the parties including the plaintiff's fees. In addition to the fees, the plaintiff was granted the right to obtain stock purchase warrants under certain conditions and price. CT Page 5188
The issue presented concerns the right of the plaintiff to purchase these warrants, as well as the amount due to the plaintiff for services rendered to the defendant. The plaintiff contends that it has performed the terms set out in the agreement and has the right to receive payment for its services and to purchase the warrants under the terms set out in the agreement.
The defendant contends that the plaintiff's right to purchase the warrants has not matured since the closing around which plaintiff's rights to obtain the warrants has not occurred.
The resolution of this dispute revolves around the interpretation of the term "closing" as used in the agreement.
A fair reading of the agreement indicates that under paragraph 4 entitled, Arrangement of Financing, the plaintiff was to obtain funding for financing the acquisition of the Middleburg Corporation. When this funding was consummated (described as "the closing") defendant is to pay plaintiff its fee, together with the granting by the defendant to the plaintiff the right to acquire at closing warrants to purchase securities.
The agreement further provides in paragraph 1 (IV) that the plaintiff was to "coordinate the closing of the funding". The agreement in the introductory paragraph sets out as the basic purpose of the agreement the type of services to be provided by the plaintiff to the defendant relating to ". . . or suspension points, the acquisition of all or part of Middleburg Corporation . . .".
The parties are not in serious dispute regarding the completion of that portion of the agreement providing for the funding for the acquisition of the Middleburg Corporation. This funding was obtained and the closing took place with the defendant acquiring the Middleburg Corporation. The defendant claims, however, that the agreement also contemplates further financial services by the plaintiff with other closings taking place before the plaintiff's rights to obtain the warrants for securities would take place.
The court does not adopt this contention of the defendant. The court notes that the agreement revolves around the acquisition of the Middleburg Corporation and the financial services to be provided by the plaintiff to obtain the funding CT Page 5189 for that acquisition.
Although the construction of the agreement is such that it is possible to interpret the extent to which the plaintiff was to provide the financial services to the defendant as extending over a period of time beyond the date of the acquisition of the Middleburg Corporation by the defendant, the agreement as a whole relates to the acquisition as a point at which the plaintiff had accomplished its services to the defendant or failed to successfully provide those services. If successful, certain fees and rights accrued to the plaintiff, if it failed and those anticipated fees and rights would not materialize.
Thus, the agreement was carried out by the plaintiff when the funding was accomplished resulting in the acquisition of the Middleburg Corporation by the defendant. This was the "closing" referred to in the agreement. This was the point at which the plaintiff carried out the terms of its agreement with the defendant. At this point the defendant's responsibility to the plaintiff under the agreement was to pay the fee and the right to accrue the warrants vested in the plaintiff.
Additionally, the agreement contemplates the need by the defendant for financial services by the plaintiff after the acquisition of Middleburg Corporation. These financial services set out a fee schedule and additional stock purchases rights for the plaintiff for these services. However, these additional financial services are not before the court.
Therefore, the court finds that there is due to the plaintiff from the defendant the sum $45,518.75, plus interest as set out in the agreement for the services rendered under the agreement; and, that the plaintiff is entitled to the warrants set out in the agreement, that is 15% of the original founders stock. In addition, the plaintiff is entitled to reasonable attorney fees from the defendant.
The court takes no action on counts 2, 3 and 4 since the court's decision on count 1 resolves the issues raised in those counts.
Therefore, judgment may enter for the plaintiff on count 1 of the complaint in the sum of and with the rights to warrants as indicated above, together with interest, court costs, and attorney fees. And judgment may enter for the defendant CT Page 5190 on count 5 of the complaint.
JULIUS J. KREMSKI STATE TRIAL REFEREE